**\*NOR FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

NEW JERSEY PHYSICIANS UNITED     :
RECIPROCAL EXCHANGE,            :
                                      :
         Plaintiff,           :
                                      :       Civ. Action No.15-6911 (FLW)
         v.                :
                                      :
PRIVILEGE UNDERWRITERS, INC.,     :           **OPINION**
_et al._,                                     :
                                      :
         Defendants.      :
_____:

**<u>WOLFSON, District Judge</u>**:

In this action, Plaintiff New Jersey Physicians United Reciprocal Exchange ("NJPURE" or "Plaintiff"), the owner of a New Jersey common law trademark of "NJ PURE," accuses Defendants Privilege Underwriters Reciprocal Exchange and Privilege Underwriters, Inc. (collectively, "Defendants") of infringing on NJPURE's mark by using a substantially similar designation in Defendants' marketing materials that has confused and deceived customers.  In its Amended Complaint ("Complaint"), Plaintiff asserts seven state and federal causes of action alleging, _inter alia_, trademark infringement, unfair competition and deceptive practices.  Presently, Defendants move to dismiss those claims based on laches and failure to state a claim.  For the reasons set forth below, Defendants' motion to dismiss is **GRANTED** in part and **DENIED** in part as follows: Plaintiff's Third, Sixth and Seventh Claims for Relief are dismissed.  Defendants' motion to dismiss all other claims is denied.

**BACKGROUND**

The following facts are derived from the Complaint and are assumed as true for the purposes of this dismissal motion.   NJPURE provides malpractice insurance to medical professionals in New Jersey and it operates as a nonprofit reciprocal inter-insurance exchange. Compl., ¶ 11.  According to NJPURE, it issued its first insurance policy to physicians in New Jersey in January 2003, and since then, has continuously used the NJPURE mark in New Jersey to refer to its brand of insurance-related services.  *Id.* at ¶ 12.  More specifically, NJPURE has "extensively advertised its services" through its website, "where much of the advertising [is] direct[ed] [to] physicians," and NJPURE has placed advertisements on outdoor billboards in New Jersey.  *Id.* at ¶ 16.   In addition, NJPURE has also "run print [ads] in several industry and local publications . . . ."  *Id.*  The NJPURE mark is shown below:



*Id.* at ¶ 15.  It is important to note that, based on the pleadings, NJ PURE has not indicated that it applied for, or registered, its NJ PURE designation.

Defendants are a group of insurance companies that provides policies related to high-value residential and personal property.[1]  Compl., ¶¶ 18-21.   In connection with their services, Defendants "have used and continue to use the designation 'PURE' as the name of one or more their companies and/or their brand of insurance products and services sold or offered for sale in

---

[1]       According to Defendants, the types of insurance that they offer include high-value homeowners insurance, private fleet auto insurance, jewelry, art and collections, personal excess liability coverage, flood insurance, and watercraft insurance.

the State of New Jersey." *Id.* at ¶ 19.  An example of the PURE design (the "PURE Designation")
is shown below:



Compl., ¶ 20.

Plaintiff alleges that Defendants, in July 2014, began to offer insurance coverage to
individuals in New Jersey.  *Id.* at ¶ 18.  And, since then, according to Plaintiff, Defendants have
been using the PURE Designation on various media and websites to "misdirect[] and misinform[]
customers who actually are looking for NJ PURE's website and insurance products."  *Id.* at ¶ 21.
In that regard, Plaintiff further alleges that the PURE Designation infringes upon the NJ PURE
mark, and that Defendants "were aware of the NJ PURE trademark and Plaintiff's rights in such
trademark, prior to adopting and using" the PURE Designation.  *Id.* at ¶ 23.

As an example of consumer confusion, Plaintiff avers that in March 2015, it received a
copy of a claim payment mistakenly sent to NJPURE at is New Jersey office by Allstate Insurance;
the claim payment, Plaintiff asserts, was meant to be sent to Defendants in connection with
Defendants' insurance services.  *Id.* at ¶ 27.  Moreover, as another instance of consumer confusion,
Plaintiff alleges that in April 2015, NJPURE received an unsolicited email from an attorney
expressing his confusion after viewing a print advertisement published by Defendants: "I was
reading the Chestnut Hill Local and saw [PURE's] ad.  I thought it was your company.  It is not.
I thought you would like to know."  *Id.* at ¶ 28.

Based on these allegations, Plaintiff avers that Defendants intentionally used the infringing PURE Designation to deceive and mislead customers and potential customers in believing that Defendants' products and services are "associated with, authorized, sponsored and supported by NJPURE in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)." (First Claim) *Id.* at ¶ 34.  In addition, Plaintiff alleges that Defendants' use of the infringing PURE Designation constitutes unfair competition in violation of the Lanham Act. (Second Claim). *Id.* at ¶¶ 38-42.  In its Third and Fourth Claims, Plaintiff brings parallel state law causes of action for trademark dilution and unfair competition, respectively, as well as a claim for common law unfair competition (Fifth Claim).  Finally, Plaintiff asserts statutory and common law causes of action of deceptive acts and practices, respectively, in its Sixth and Seventh Claims.

In the instant matter, Defendants move to dismiss the entire Complaint on timeliness grounds.  Alternatively, Defendants posit that the state law trademark dilution claim is precluded by Defendants' federal trademark registration of the PURE Designation. Defendants further maintain — and Plaintiff concedes — that there is no private cause of action under the New Jersey Insurance Trade Practices Act (Sixth Claim), and that New Jersey does not recognize a common law claim for deceptive acts and practices (Seventh Claim).  *See* Pl. Opp. Br., p. 13; *see Exeltis USA Dermatology, Inc. v. Acella Pharms., LLC*, No. 15-7446, 2016 U.S. Dist. LEXIS 105960, at *15 (D.N.J. Aug. 11, 2016).  Because Plaintiff does not oppose Defendants' motion on those two claims, the Sixth and Seventh Claims are dismissed with prejudice.

## DISCUSSION

### I.      Standard of Review

Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss

on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quotations omitted). Under such a standard, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

However, Rule 12(b)(6) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. The complaint must include "enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 234 (citation and quotations omitted); *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief.") (citation and quotations omitted).

In sum, under the current pleading regime, when a court considers a dismissal motion, three sequential steps must be taken: first, "it must take note of the elements the plaintiff must plead to

state a claim." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quotations and brackets omitted). Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quotations omitted). Lastly, "when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quotations and brackets omitted).

## II.    Statute of Limitations[2]

As a preliminary matter, Defendants' timeliness argument is based upon the registrations of certain PURE related marks, including the PURE Designation, with the United States Patent and Trademark Office ("USPTO"), and more importantly, Defendants intend to rely on the dates when those marks were registered.  However, in its Complaint, Plaintiff does not allege that the PURE Designation is a registered federal trademark; in fact, Plaintiff does not mention that Defendants are holders or owners of any federal marks.  Thus, I must first decide, on this dismissal motion, whether to take judicial notice of various filings that Defendants made with the USPTO.

As I referenced, *supra*, generally, courts may not look to materials outside of the complaint to rule on a Rule 12(b)(6) motion.  Under the doctrine of judicial notice, however, courts are permitted to establish and rely on "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b). Specifically, in the context of USPTO filings, the Federal Circuit has advised that "courts may

---

[2]    The Third Circuit has long ago explained that a statute of limitations defense may be raised on a Rule 12(b)(6) motion if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Hanna v. U.S. Veteran's Admin. Hosp.*, 514 F.2d 1092, 1094 (3d Cir. 1975); *see Estrada v. Trager*, No. 01-4669, 2002 U.S. Dist. LEXIS 17342, at *2 (E.D. Pa. Sept. 10, 2002).

take judicial notice of the existence of . . . trademarks under Fed. R. Evid. 201(c), as . . . the registration documents by the [USPTO] are 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *In re Chippendales USA, Inc.*, 622 F.3d 1346, 1356 (Fed. Cir. 2010); *Foster v. Pitney Bowes Corp.*, 2013 U.S. Dist. LEXIS 17061, at *4 n.4 (E.D. Pa. Feb. 7, 2013); *see Daniels-Hall v. Nat'l Ed. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  Based on the foregoing authorities, this Court takes judicial notice of the various USPTO records as the materials were made publicly available by a governmental entity, and therefore, their accuracy cannot reasonably be questioned; however, I will only consider the registrations for the limited purpose of demonstrating that the filings made by Defendants in fact occurred and dates upon which they occurred.[3]

The Lanham Act provides that "[r]egistration of a mark on the principal register provided by this chapter . . . shall be constructive notice of the registrant's claim of ownership thereof." 15 U.S.C. § 1074.  The Act, however, does not contain a statute of limitations. Rather, the statute subjects all claims to "the principles of equity." 15 U.S.C. § 1117(a); *Santana Prods. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 135 (3d Cir. 2005).  In that connection, the parties do not dispute that the Third Circuit has applied the doctrine of laches to bar a Lanham Act claim when there is "(1) inexcusable delay in bringing suit, and (2) prejudice to the defendant as a result of the delay." *Id.* at 138.  "Inexcusable delay" for purposes of laches is measured by looking to "the most analogous" state statute of limitations. *Id.* at 135; *D'Agostino v. Appliances Buy Phone, Inc.*, 633 Fed. Appx. 88, 91 n.3 (3d Cir. 2015).  And, § 43(a) claims under the Lanham Act — such as unfair competition or infringement claims raised here — are analogized to New Jersey's six-year fraud

---

[3]     I further note that Plaintiff does not dispute the registration dates of the marks introduced by Defendants on this motion, nor does Plaintiff challenge the validity of the various USPTO registrations.

statute. *Kaufhold v. Caiafa*, 872 F. Supp. 2d 374, 379 (D.N.J. 2012); *Zinn v. Seruga*, No. 05-372, 2009 U.S. Dist. LEXIS 89915, at *24 (D.N.J. Sep. 28, 2009); *see Beauty Time, Inc. v. VU Skin Sys.*, 118 F.3d 140, 143 (3d Cir. 1997); *AT&T v. Winback & Conserve Program*, 42 F.3d 1421, 1433 (3d Cir. 1994).

Importantly, under the Lanham Act, statute of limitations begins to run at the time "the right to institute and maintain the suit arises." *Beauty Time*, 118 F.3d at 144 (citations and quotations omitted). In other words, "aggrieved parties must . . . bring their claim within [the applicable statute of limitations] when they learned or should have learned, through the exercise of due diligence, that they have a cause of action." *Id.* at 148; *Medical Prods. Labs. v. Premier Dental Prods. Co.*, No. 12-6051, 2013 U.S. Dist. LEXIS 13719, at * (E.D. Pa. Feb. 1, 2013); *see Internet Specialties West, Inc. v. Milon-Digiorgio Enters.*, 559 F.3d 985, 990 (9th Cir. 2009) (finding that in a trademark case, "the limitations period for laches starts from the time that the plaintiff knew or should have known about its potential cause of action."); *Jaso v. The Coca Cola Co.*, 435 Fed. Appx. 346, 355 (5th Cir. 2011)("The time period for laches under the Lanham Act "begins when the plaintiff knew or should have known of the infringement."); *see also Kelly v. Estate of Arnone*, No. 08-6046, 2009 U.S. Dist. LEXIS 66945, at *18-20 (D.N.J. Aug. 3, 2009)(finding that the statute of limitations began to run when the trademark was registered because the plaintiff had constructive notice that the mark existed at that time). "Once the statute of limitations has expired, the defendant 'enjoys the benefit of a presumption of inexcusable delay and prejudice.'" *Santana*, 401 F.3d at 138-39 (quoting *EEOC v. The Great Atlantic & Pacific Tea Co.*, 735 F.2d 69, 80 (3d Cir. 1984)). The burden then shifts to the plaintiff to prove that its delay in bringing the claim was excusable, and that the delay did not prejudice the defendant. *See Santana*, 401 F.3d at 138-39.

Here, in the context of infringement, Plaintiff alleges that "Defendants' use in commerce of the PURE brand name on and in connection with the sale of its products and services and on its website, without permission or consent of NJ PURE, has caused and is likely to cause confusion, or to cause mistake, or to deceive and mislead customers and potential customers . . . ." Compl., ¶ 34. In point of fact, Plaintiff explains that its basis for infringement centers on the designation of the word "PURE." Id. at ¶19 ("Defendants have used and continue to use the designation 'PURE' as the name of one or more of their companies and/or their brand of insurance products and services sold or offered for sale in the State of New Jersey."). While Plaintiff, in its Complaint, provides an example of the PURE logo, which design is shown previously in this Opinion, it is important to note that Plaintiff does not allege that its infringement claims are based upon the *design* or look of the PURE mark. The entirety of Plaintiff's infringement allegations, instead, turn on Defendants' use of the PURE name. Based on these accusations, Defendants argue that Plaintiff's Lanham Act claims must be time-barred because the PURE Designation was first registered by Defendants with the USPTO in 2008, and that registration provided Plaintiff constructive notice that Defendants have been using the mark for approximately eight years.

Indeed, the Court takes judicial notice that Defendants first registered their PURE Designation in October 2008. The service mark reads "PURE HIGH NET WORTH INSURANCE." *See* USPTO Reg. No. 3,513,189. Moreover, since that time, Defendants have continued to register the PURE Designation in different iterations, with the latest registration in November 2015. *See* USPTO Reg. No. 86,821,813. Defendants are correct in their contention that the earliest registration of the PURE Designation provided constructive notice to Plaintiff that since 2008, Defendants have had a registered PURE mark. But, crucially, what Defendants have ignored is when Plaintiff was aware of any potential infringement.

9

To reiterate, the limitations period starts from the time that Plaintiff knew or should have known about its potential cause of action. *Beauty Time*, 118 F.3d at 144.  That means, once Plaintiff has knowledge of any potential infringing conduct committed by Defendants, Plaintiff must bring suit within six years.  And, from the face of the Complaint, Plaintiff did so.  According to the Complaint, Plaintiff's "NJ PURE" mark, while not registered, enjoys rights under New Jersey trademark common law, and therefore, the protection of that mark is geographically limited to New Jersey.  As pled, Plaintiff, in New Jersey, has been using the "NJ PURE" mark since 2003 in connection with its medical malpractice insurance business.  Furthermore, based on the Complaint, Defendants did not begin offering their products in New Jersey until 2014.  Compl., ¶ 18.  Thus, while it is true that Defendants federally registered the PURE Designation in 2008, their alleged infringement activities did not occur in New Jersey until 2014 when Defendants first sold their products in this state.  Put differently, although Plaintiff was presumably on notice that Defendants were using their PURE Designation elsewhere in the country since 2008, Plaintiff alleges that the PURE products were sold in 2014 for the first time in New Jersey — the same geographic market as NJPURE — and therefore, Plaintiff could not have been aware of any potential infringing conduct by Defendants prior to 2014.  According to Plaintiff, once it was aware of the alleged infringing activities by Defendants, it timely brought suit in 2015 — well within the statute of limitations period.  Accordingly, I reject Defendants' laches defense based on the pleadings before me.[4]

---

[4]      Of course, if, through the course of discovery, there is evidence showing that Defendants competed in the same geographic location as NJPURE before 2014, and that NJPURE should have been aware of the alleged infringing activities much earlier, Defendants may revive their statute of limitations defense at that time.  My determination, here, is based on the pleadings, as it must on a dismissal motion.

### III.   Preclusion

In its Third Claim, Plaintiff asserts a trademark dilution cause of action under N.J.S.A. 56:3-13.20.  Defendants argue that this state claim is barred by Defendants' federal trademark registration for the PURE Designation.  Plaintiff does not dispute that a federal trademark registration acts as a bar to any state-law based claims for dilution.  Indeed, the Federal Trademark Dilution Act provides that "[t]he *ownership by a person* of a valid registration . . . on the principal register under this Act shall be a complete bar to an action against that person, with respect to that mark, that – (A) is brought by another person under the common law or a statute of a State; and (B) (i) seeks to prevent dilution by blurring or dilution by tarnishment; or (ii) asserts any claim of actual or likely damage or harm to the distinctiveness or reputation of a mark, label, or form of advertisement."  15 U.S.C. § 1125(c)(6) (emphasis added).

Here, Plaintiff takes issue with the fact that Defendants are not technically the "owner" of the registered PURE Designation.  In Defendants' motion papers, they remark, in a footnote, that "Defendants' trademark registrations are owned by one of Defendants' wholly-owned subsidiaries, [non-defendant] Pure Risk Management, LLC."  Defs' Br., p. 7 n. 1. Relying on such a representation, Plaintiff argues that because Defendants do not "own" the PURE marks, they cannot invoke § 1125.  Plaintiff's argument is easily disposed of.  As the parent, Defendants, generally, have standing to bring or oppose trademark infringement suits on behalf of their wholly-owned subsidiary because the "damage to the subsidiary will naturally lead to financial injury to [the parent]."  *Dalton v. Honda Motor Co.*, 425 Fed. Appx. 886, 890 (Fed. Cir. 2011) (citations and quotations omitted); *see Jewelers Vigilance Comm., Inc. v. Ullenberg Corp.*, 823 F.2d 490, 493 (Fed. Cir. 1987) ("a parent corporation has standing to oppose on the basis of a mark owned and controlled by its subsidiary"); *Lipton Indus. v. Ralston Purina Co.,* 670 F.2d 1024, 1029 (1982)

(noting that the court has found standing to protect a subsidiary's mark).  Based in part on that principle, for the purposes of trademark registration, Title 15 U.S.C. § 1051 provides that the "owner of a trademark used in commerce may request registration of its trademark on the principal register . . . ." 15 U.S.C. § 1051.  In turn, § 1201.03 of the Trademark Manual of Examining Procedures elaborates upon the requirements of that statute and states that as between parent and subsidiary corporations, ownership of a mark is a matter to be decided by the parties. *See* Trademark Manual, Section 1201.03(b); *see also* 1 J. McCarthy Trademarks and Unfair Competition, Section 16.13(c).  In that regard, when a subsidiary company is wholly-owned and controlled by a parent corporation, such as is the case here, the trademark can be treated as "the common property of the parent and the subsidiary corporation." *Borden, Inc. v. Great Western Juice Co.*, 183 U.S.P.Q. (BNA) 570 (T.T.A.B. 1974); *Ithaca Industries, Inc. v. Essence Communications, Inc.*, 706 F. Supp. 1195, 1207 (W.D.N.C. 1986).  Thus, because Pure Risk Management is a wholly-owned subsidiary of, and controlled by, Defendants, the ownership of the PURE Designation is treated as common property between these entities for trademark purposes.  In that respect, Plaintiff's state law claim for trademark dilution is barred by § 1125 as the PURE Designation is registered with the USPTO; Plaintiff's Third Claim for Trademark Dilution under New Jersey state law is dismissed.[5]

---

[5]       To the extent Plaintiff seeks to bring a Trademark Cancellation claim under Section 37 of the Lanham Act, 15 U.S.C. § 1119, Plaintiff may file a motion to amend before the Magistrate Judge.  This Court makes no comment on the viability of such a claim.

**CONCLUSION**

Based on the foregoing reasons, Defendants' motion to dismiss is **GRANTED** in part and **DENIED** in part.  Plaintiff's Third, Sixth and Seventh Claims are dismissed.  Defendants' motion to dismiss all other claims is denied.


<u>/s/ Freda L. Wolfson</u>
Freda L. Wolfson
U.S. District Judge